## Penn Lakes Girl Scout Council, Inc. v. Warren County Zoning Hearing Board

*H. Robert Hampson,* for appellant.
*William R. Mervine,* for board.

WOLFE, *P.J.,* August 11, 1980—This appeal comes to us by appellant, Penn Lakes Girl Scout Council, Inc., by reason of the granting of a "special permit" to William White who seeks to operate a race track for vehicles in an area zoned "Agricultural-Conservation-Recreation (A-C-R)."

Regrettably but by necessity we are compelled to remand the record to the board because of the lack of a sufficient record for us to even determine the exact issue or issues and what we conceive to be procedural errors.

On June 7, 1979 the Warren County Zoning Hearing Board held a public hearing on the application of William White to operate a race track off Grunderville Road in Pleasant Drive in District "A-C-R."

At the appointed time the county solicitor conducted the hearing examination by interrogating the zoning officer and the applicant. The applicant testified the track at the time was not presently operating, "We shut it down because the Board of Health shut it down." It was developed operations were compelled to be ceased because of the sewers and the lack of a permit from the Department of Environmental Resources. The use of the track before closure was for stock car races.

Procedurally, after the foregoing testimony the county solicitor queried:

"Does the Board have any further questions? Okay. Now anybody who has anything to say in opposition, can come forward now and then after they are done, anybody who has anything they want to say in favor . . . maybe you can slip over here and let someone else sit there and testify. You were sworn in I believe.

"Buerkle: Yes, I was.

"Mervine (County Solicitor): Could we have your name for the record.

"Buerkle: I'm Mary Ann Buerkle and I am here officially representing Penn Lakes Girl Scout Council."

From this point on Mary Ann Buerkle told the board of the history of the Girl Scouts and the distance of the track from the Council's property which is approximately a mile and a half to two miles the exact distance not being determined. The main objection is traffic congestion Mrs. Buerkle stating:

"We have, over the years, spent a great deal of time on environmental studies. We teach, well we used to have a bicycle patrol. But, we had to give that up because the Grunderville Road is not suita-. ble for bicycles and it is now, the girls do a great deal of hiking throughout the Allegheny National Forest, not just on our campsite but, throughout the forest. A, this certainly is a factor that we feel is very unpleasant. We have employed counsel, a, he unfortunately was not able to be here this afternoon but, Mr. Hampson is representing us and we think that you should consider all of the factors before allowing this to open and the effect that it is going to have."

The owner of the property, Ben White, then testified as to the proposed operation of the track.

After this testimony that concluded the hearing on that particular case.

At the board hearing only two members were present and no official action was taken. Apparently the next official action that was taken was on June 11, 1979 when the zoning officer played back a tape recording of the hearing to the absent board member, who, after listening to the testimony on the tape voted in favor of the application for the race track of Bill White for the reason the main objection was the traffic by the Girl Scout camp and the race track was in existence prior (thereto). We note here this is the first indication that the race track was in existence prior to the established Girl Scout camp, if indeed, this be the case.

Next, the second member of the board, Charles Merroth, who had been at the June 7 meeting, and hearing the motion of the absent member, Ed Johnsen, gave his affirmative vote on June 12, 1979. This approval of Mr. Merroth was contingent on the recommendation of the D.E.R. on either a sewage permit or a letter stating that sewage is approved. Finally, the third member, Charles Genaux, who was present at the June 7, 1979 meeting rendered a negative vote on June 15, 1979.

Hence, procedurally at the initial hearing only two board members were present. The zoning officer took the tape from home to home of the board members to finally obtain their vote all of which is done without the presence of the others by use of the tape recording of the initial hearing.

Although this procedure certainly may expedite an issue, it is improper. The board members are in a quasi-judicial capacity and have the duty to listen to the testimony and to consider the testimony after

due deliberation with the other members. Article XVII, Section 1703 governs the procedure that must be followed by the zoning hearing board:

"1. The Zoning Hearing Board shall strictly comply with the requirements of law and this Ordinance as to hearings, notice and procedures. It shall prescribe such supplemental rules of procedure as it deems advisable. Each appeal or application made to the Board shall be in writing and shall refer to the specific provisions involved, setting forth exactly the interpretation that is claimed, the use for which the permit is sought, or the details of the variance that is applied for, and the grounds upon which it is based.

2. Every decision of the Zoning Hearing Board shall be by resolution, which shall set forth the findings of the Board in the particular case. Each such resolution together with all documents pertaining thereto, shall be filed in the office of the Chief Clerk under one of the following headings: 'Interpretation,' 'Variances,' 'Permits.' The Zoning Hearing Board shall notify the Zoning Officer of each permit and each variance granted and of each interpretation made under the provision of this Ordinance."

Here, the board did not make any findings of fact or discuss any of the facts or make any conclusions of law.

Not only must the zoning hearing board make a verbatim stenographic record it must also make written findings of fact and conclusions of law. Without findings of fact and conclusions of law the court cannot determine the issue or the reasoning of the board: McClellan v. Zoning Hearing Board, 8 Pa. Commonwealth Ct. 537, 304 A. 2d 520 (1973).

Next, the record that was prepared, although a

verbatim record does not define the nature of the permit Mr. White was seeking. We were delivered a letter under date of July 3, 1980 (which we now make of record) from the zoning officer advising the court that William White had applied for a zoning permit to place a race track on property belonging to Benjamin White situate in Pleasant Township. "We have held back the issuance of this permit until sewage was approved by the Department of Environmental Resources." With this letter was a copy of a letter under date of July 2, 1980 from the Secretary Manager of Pleasant Township Board of Supervisors stating they had no objections to the use of portable toilets by Ben White for proposed motorcycle races on his property for no longer than one racing season "so long as they comply with D.E.R. regulations and are permitted by D.E.R."

There is nothing in the record to conclude the Department of Environmental Resources has or has not sanctioned the use of the portable toilets which, and apparently, as we must presume this was the reason the permit was not granted to Ben White.

Thus, we question if Mr. White is seeking a permit to continue a non-conforming use or if he has a right to operate the track as a matter of right since all he may need is the permit from the Department of Environmental Resources and needs no sanctions or consent of the zoning hearing board. Stated in another way exactly what did the Zoning Hearing Board resolve?

Next, we do not conclude but question the right of the standing of appellant to pursue this matter as "an aggrieved party." As stated, the record only shows that Mary Ann Buerkle stated she was officially representing Penn Lakes Girl Scout Council. There was no evidence of record as to what Mrs.

Buerkle's official capacity is and her authorization to act on behalf of appellant.

Our courts have discussed who is and who is not a "person aggrieved" by the decision of a zoning hearing board: Baker v. Zoning Hearing Board of W. Goshen Twp., 27 Pa. Commonwealth Ct. 602, 367 A. 2d 819 (1976). This case holds that if a person attending the hearing is permitted to become a party thereto then that person becomes a "party aggrieved." However, the court made it clear that the person must appear as a party. In the instant case we believe the record as it now stands merely shows Mrs. Buerkle was a witness, officially representing the Girl Scout Council and was not acknowledged to be a "party." In Cablevision v. Zoning Hearing Board of Easton, 13 Pa. Commonwealth Ct. 232, 235, 320 A. 2d 388 (1974), the court stated:

"A cardinal principle, which applies alike to every person desiring to appeal, whether a party to the record or not, is that he must have a direct interest in the subject matter of the particular litigation, otherwise he can have no standing to appeal. And not only must a party desiring to appeal have a direct interest in the particular question litigated, but his interest must be immediate and pecuniary, and not a remote consequence of the judgment. The interest must also be substantial. To be thus aggrieved the interest of the party must be adversely affected by the order, judgment or decree appealed from."

We recognize we could hold a hearing de novo, McClellan v. Zoning Hearing Board, supra, but to do so would compel a restructuring or refiling of applications which we believe can be better handled by the matter again coming before the board

for a full hearing by the board followed by a findings of statements of fact and conclusions of law within the confines of the foregoing opinion and the making of a verbatim record.

For these reasons we enter the following

## ORDER

And now, August 11, 1980, appeal is dismissed and the record remanded to the Warren County Zoning Hearing Board for proceedings within the guidelines of the within opinion.